IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JASON T.,[1] | Case No. 6:23-cv-01663-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Jason T. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or is based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in April 1970, making him forty-eight years old on October 15, 2018, the application filing and amended disability onset date.[2] (Tr. 39, 222, 258.) Plaintiff alleges

---

[2] "SSI benefits are not payable prior to the month following the month in which the application was filed, and therefore the ALJ's disability determination [in an SSI case] is whether [the claimant] was under a disability as of the date the application was filed." *Pineda v. Comm'r of Soc. Sec.*, No. 1:22-cv-01287-SAB, 2023 WL 5334984, at *1 n.3 (E.D. Cal. Aug. 18, 2023) (citation omitted).

disability due to "no warning" grand mal seizures, dizziness spells, and migraines. (*Id.* at 294-301.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on June 3, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 122-24.) Plaintiff, accompanied by his attorney, testified at an administrative hearing on November 1, 2022, along with a vocational expert ("VE"). (*Id.* at 34-74.) On November 28, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 17-24.) On September 22, 2023, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review. (*Id.* at 1-6.) Plaintiff now seeks judicial review.

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled within the meaning of the Social Security Act. *See id.*

PAGE 3 – OPINION AND ORDER

at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 17-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2018, the application date. (*Id.* at 19.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: "seizure disorder and coronary artery disease with bypass surgery in June 2021." (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work. (*Id.*) The ALJ limited him to "occasionally climb ramps and stairs" and "occasionally stoop, crouch, kneel, and crawl" but "never climb ladders, ropes, or scaffolds[,]" "never be required to balance as part of his job activities[,]" "never work around unprotected heights or moving and/or dangerous machinery[,] and never be required to drive a vehicle as part of work activities." (*Id.*) The ALJ also found that Plaintiff can "tolerate moderate noise levels and must avoid bright lights (in excess of typical office or retail lighting) and flashing lights." (*Id.*)

At step four, the ALJ concluded that Plaintiff has no past relevant work experience. (*Id.* at 23.) At step five, the ALJ concluded that Plaintiff was not disabled because he was "capable of

PAGE 4 – OPINION AND ORDER

making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 24.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons to discount (i) the medical opinion of Yulia Whidden, FNP ("FNP Whidden"); (2) Plaintiff's symptom testimony; and (3) the lay witness testimony of Plaintiff's fiancée. (*See generally* Pl.'s Opening Br. ("Pl.'s Br."), ECF No. 12.)

As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. Accordingly, the Court remands Plaintiff's case for the calculation and payment of benefits.

### I.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting the opinion of Plaintiff's nurse practitioner, FNP Whidden. (*Id.* at 5-9.) The Court agrees.

#### A.    Applicable Law

The Ninth Circuit has recognized that the Social Security Administration's updated regulations for evaluating medical evidence "apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017." *Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022). Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and

PAGE 5 – OPINION AND ORDER

nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Even under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* An ALJ "must articulate how persuasive [the ALJ] finds all the medical opinions from each doctor or other source," and must explain how he or she "considered the supportability and consistency factors in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b)) (simplified).

### B. Analysis

The Court concludes that substantial evidence does not support the ALJ's evaluation of FNP Whidden's opinion.

#### 1. FNP Whidden's Opinion

FNP Whidden began treating Plaintiff for his conditions on December 5, 2018. (*See* Tr. 415.) On January 5, 2022, FNP Whidden provided a treating source statement regarding the severity and limiting effects of Plaintiff's seizures and migraine headaches. (*Id.* at 996-98.) FNP Whidden opined that Plaintiff's seizures and migraines are both chronic diseases that "are controlled with medications to some extent." (*Id.* at 996.) FNP Whidden reported that Plaintiff's seizures include a "loss of consciousness and clonic-tonic muscle activities." (*Id.* at 997.) FNP Whidden observed that Plaintiff's migraines are "well controlled for now[,]" but that he has frequent tension headaches in the occipital area. (*Id.*) FNP Whidden's opinion included descriptions of Plaintiff's objective medical testing, including an electroencephalography ("EEG") from 2019 showing "abnormal spikes in the left and right frontal areas" and magnetic resonance imaging ("MRI") in 2019 showing a small focus of gliosis within the anterior left frontal cortex. (*Id.*)

///

FNP Whidden reported that Plaintiff has to lie down or rest for thirty minutes following a headache until his medication takes effect, and he may need to remain in bed for the remainder of the day after a seizure. (*Id.*) Plaintiff's treatment included Oxcarbazepine, Vimpat, and Amitriptyline. (*Id.* at 998.) Oxcarbazepine causes headaches, somnolence, fatigue, and impaired concentration, and Amitriptyline causes sedation. (*Id.*) FNP Whidden reported that Plaintiff's conditions would cause him to miss more than four workdays per month. (*Id.*)

### 2.     The ALJ's Findings

The ALJ found that FNP Whidden's opinion was "not persuasive." (*Id.* at 22-23.) The ALJ explained that FNP Whidden's "treatment notes do not support the noted frequency of absences due to seizures," citing her treatment notes:

> [I]n March 2021, Ms. Whidden noted that [Plaintiff] reported having seizures once every 2 to 3 months, with his most recent seizure approximately 1.5 months prior. In April 2022, she noted that [Plaintiff] reported 4 seizures in December 2021 and January 2022, 2 seizures in March 2022, and no seizures in February or April 2022. In August 2022, [Plaintiff] reported 2 recent seizures, in the context of medication change.

(*Id.* at 23) (internal citations omitted). The ALJ reasoned that this evidence "indicate[s] continued seizure activity, but do[es] not support a finding that these seizures would prevent work more than [four] days per month." (*Id.*) The ALJ also found that FNP Whidden's statements regarding Plaintiff's headaches were unsupported. (*Id.*)

### 3.     Disposition

The Court concludes that the ALJ committed harmful error in discounting FNP Whidden's opinion.

Plaintiff argues that "even evaluating only the documented frequency of [Plaintiff]'s seizures requires a finding of disability per vocational expert testimony" and therefore the ALJ's discussion of the combined effect of Plaintiff's seizures and headaches on his ability to maintain

PAGE 7 – OPINION AND ORDER

work attendance was misplaced. (*See* Pl.'s Br. at 8.) Plaintiff also asserts that the ALJ focused only on periods of reduced seizure activity to discount FNP Whidden's opinion. (*Id.*)

FNP Whidden's treatment notes reflect that Plaintiff regularly suffered grand mal seizures, up to five times per month, as well as daily tension headaches and less frequent migraines. (Tr. 996-98.) Her treatment notes reflect that Plaintiff had three seizures in October 2018, five in November 2018, and that he was also experiencing headaches with associated photophobia, phonophobia, nausea, and vomiting five to six times per week. (*Id.* at 415, 574.) In March 2021, FNP Whidden reported that Plaintiff was "having seizure episodes once every 2-3 months[,]" but that he "complains of headache that he is experiencing every day." (*Id.* at 999.) A 2022 treatment note reflects that Plaintiff had four grand mal seizures in December 2021 and January 2022, two in March 2022, but none in February or April 2022. (*Id.* at 1017.) Treatment notes further reflect that Plaintiff had two seizures in August 2022, in the context of a medication change. (*Id.* at 1021.)

Evaluating the record as a whole, the Court finds that isolated periods of reduced seizure activity do not provide substantial evidence to discount FNP Whidden's opinion. The record demonstrates that Plaintiff's grand mal seizures are random and difficult to predict. (*See id.* at 571, 573, 889-915.) However, the record establishes that during the relevant time period, Plaintiff consistently suffered grand mal seizures, with increasing frequency, including an average of greater than two seizures each month and up to four or five seizures per month. (*See* Def.'s Br. at 6, noting that in 2020, Plaintiff suffered four seizures in January; two in February; one in March; two in April; two in May; three in June; two in July; one in August; two in September; three in October; two in November; and two in December; Pl.'s Reply at 2, citing a seizure log in Plaintiff's medical records (Tr. 889-915) indicating that Plaintiff suffered three

PAGE 8 – OPINION AND ORDER

seizures in October 2018, five in November 2018, three in December 2018, two in January 2019, two in February 2019, four in March 2019, three in April 2019, one in May 2019, two in June 2019, three in July 2019, three in August 2019, one in September 2019, two in October 2019, one in November 2019, three in December 2019, four in January 2020, two in February 2020, one in March 2020, two in April 2020, two in May 2020, three in June 2020, two in July 2020, one in August 2020, two in September 2020, three in October 2020, two in November 2020, and two in December 2020.) FNP Whidden reported that "after a seizure [he] might need to be in a bed the whole day" (Tr. 997), necessarily supporting that each seizure results in at least one missed workday.[3]

In light of this record, the ALJ's conclusion that FNP Whidden's treatment notes do not support her opinion about the frequency of Plaintiff's seizures and their impact on his workdays is not supported by substantial evidence. *See Robbins*, 466 F.3d at 882 (holding that a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence" (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989))); *see also Shirley C. v. Comm'r Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *8 (D. Or. July 15, 2021) ("The new regulations do not . . . displace the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this

---

[3] FNP Whidden opined that Plaintiff would miss four workdays because of his seizures and headaches, and the ALJ discounted FNP Whidden's opinion in part because Plaintiff's headaches "are mild and responsive to Tylenol." (Tr. 23, citing Tr. 1017.) However, FNP Whidden opined that Plaintiff would miss work because he "had to lie down or rest for thirty minutes following a headache" in order for the Tylenol to start working (*id.* at 997), and FNP Whidden reported that Plaintiff suffers headaches every day. (*See id.* at 999, "[T]he patient complains of headache that he is experiencing every day.") The Court finds that Plaintiff's responsiveness to Tylenol does not provide substantial evidence to discount FNP Whidden's opinion about whether his headaches would otherwise impact Plaintiff's workday. In any event, as discussed below, the Court finds that Plaintiff would exceed the customary tolerance for absences because of his seizures alone.

PAGE 9 – OPINION AND ORDER

Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion.") (citation omitted).

For these reasons, the Court finds that the ALJ's reasons for discounting FNP Whidden's opinion were not supported by substantial evidence.

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-00583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (first citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); then citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); and then citing *Light v. Comm'r Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

PAGE 10 – OPINION AND ORDER

### B.    Analysis

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments that might reasonably produce the symptoms alleged. (*See* Tr. 21.) The ALJ was therefore required to specify which testimony the ALJ found not credible and provide clear and convincing reasons to discount Plaintiff's symptom testimony. See *Ghanim*, 763 F.3d at 1163.

#### 1.    Plaintiff's Testimony

Plaintiff testified at his 2022 hearing that he gets "three to five" no-warning seizures per month and that he experiences them despite taking preventative anti-seizure medications. (Tr. 51.) He testified that he began having grand mal seizures in 2007. (*Id.* at 42.) Plaintiff discussed that some months he does not experience seizures, but that when he does experience seizures, "it makes every muscle in [his body sore,]" and it "feels like somebody beat the heck out of [him] or [he] went on a 10[-]mile hike." (*Id.* at 61.) Plaintiff testified that it takes him days to get back to what "[he] call[s] normal." (*Id.*) He claims that when a seizure happens, he hits his head a lot and it puts him "on the ground." (*Id.*) As a result, he is not allowed to drive and relies on medical transport to attend appointments. (*Id.* at 42-43, 65-66.)

Plaintiff also stated that his migraines "come and go" and that every few days he gets one that "puts [him] out of commission." (*Id.* at 47.) His non-migraine headaches occur more frequently, but are not as debilitating as the migraines. (*Id.* at 43, 48, 63-64.)

#### 2.    The ALJ's Findings

The ALJ discounted Plaintiff's testimony "regarding the frequency of his seizures or the severity of his other symptoms." (*Id.* at 21.) The ALJ cited treatment records that "indicate a long history of seizures dating from prior to 2007, but [show] inconsistent treatment for this condition." (*Id.*) The ALJ found that in 2016, Plaintiff "sought care after a significant gap in

PAGE 11 – OPINION AND ORDER

treatment, reporting no medication for [two] years and poor control of his seizures, with [six] episodes in the last year." (*Id.*) In March 2017, "he reported generally having [seven] to [eight] seizures per year[.]" (*Id.*) In August 2017, "he reported episodes approximately once per month." (*Id.*) In October 2018, "he reported that his seizure disorder was fairly well controlled with medication." (*Id.*) However, an "electroencephalogram performed in January 2019 was slightly abnormal" and reflected spikes "of a potentially epileptogenic nature." (*Id.*)

The ALJ further summarized that in April 2019, Plaintiff reported two seizures the previous month, triggered by stress, and side effects from his seizure medications. (*Id.*) Plaintiff reported two seizures in early September 2019 and two seizures in October 2019. (*Id.*) Plaintiff visited the emergency room in January 2020, reporting recent seizures and a fall down the stairs. (*Id.*) He had multiple seizures in the emergency room. (*Id.*) The ALJ noted that Plaintiff had an elevated blood alcohol content while in the emergency room, "leading to a conclusion that his seizures were likely multifactorial." (*Id.*) The ALJ further noted that the treatment notes reflect that Plaintiff's medical refill patterns suggested noncompliance at that time, which Plaintiff acknowledged. (*Id.*)

In March 2021, Plaintiff reported seizures every two to three months, as well as daily headaches. (*Id.* at 22.) In January 2022, he reported four seizures the prior month, rare migraine headaches, and frequent tension headaches treated with Tylenol. (*Id.*) In April 2022, he reported four seizures in December and January, two in March, and none in February or April; and he reported two seizures in August 2022. (*Id.*) During this time period, his physicians prescribed new medications for his seizures following failed trials of Dilantin, Topamax, and Keppra. (*Id.*)

The ALJ concluded that "[a]lthough this record demonstrates [Plaintiff]'s allegations of persistent seizures, it does not support the frequency of these seizures." (*Id.* at 22.) To support

this assertion, the ALJ summarized imaging and other diagnostic records that showed Plaintiff being "seizure-free" and that he had only "slightly abnormal" examination findings. (*Id.* at 21-22.)

### 3. Disposition

Plaintiff argues that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence to discount Plaintiff's symptom testimony. (Pl.'s Br. at 9-14; Pl.'s Reply Br. at 2.) Specifically, Plaintiff argues that there are no treatment gaps in the adjudicatory period, and despite the ALJ's acknowledgement that "the record demonstrates [Plaintiff]'s allegations of persistent seizures[,]" the ALJ asserted without explanation that the record failed to support the alleged frequency of the seizures. (Pl.'s Br. at 11-12, citing Tr. 22.) The Commissioner responds that the ALJ reasonably discounted Plaintiff's testimony because it conflicted with the medical record and his seizures were controlled with medication and conservative treatment. (Def.'s Br. at 3-13, ECF No. 14.)

In evaluating symptom testimony, an ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Larsen v. Kijakazi*, No. 18-55398, 2022 WL 1537365, at *1 (9th Cir. May 16, 2022) (finding that the ALJ did not err in discounting the claimant's testimony in part because "there was an unexplained absence of treatment for a portion of the closed period"); *see also Mutter v. Kijakazi*, No. 18-15877, 2021 WL 4776379, at *1 (9th Cir. Oct. 13, 2021) ("The ALJ provided specific, clear, and convincing reasons to discount [the claimant]'s symptom testimony as inconsistent with and unsupported by the record and based on a lengthy gap in treatment, conservative treatment, and evidence that his conditions were managed with medication.").

///

PAGE 13 – OPINION AND ORDER

First, although the ALJ clearly identifies October 15, 2018, as Plaintiff's application and amended disability onset date, he cites a gap in treatment in 2016 to discount Plaintiff's testimony about the frequency of his grand mal seizures during the adjudicatory period. (*See* Tr. 21; *cf.* Def.'s Br. at 6, highlighting a gap in seizures before the adjudicatory period.) The record does not reflect any treatment gaps in the adjudicatory period. The Court finds that a gap in treatment that predated Plaintiff's disability onset date by more than two years does not provide substantial evidence to discount the frequency of his seizures during the adjudicatory period.

Second, the ALJ acknowledged Plaintiff's "persistent" seizures but discounted his alleged frequency of seizures. (Tr. 22.) Although the ALJ's reasoning is unclear, the Commissioner interprets the ALJ's opinion as discounting Plaintiff's hearing testimony that he suffered "three to five" seizures a month because the medical record reflects only "one to three seizures a month." (Def.'s Br. at 6, noting that in 2020, Plaintiff suffered four seizures in January; two in February; one in March; two in April; two in May; three in June; two in July; one in August; two in September; three in October; two in November; and two in December.) However, even if Plaintiff inaccurately calculated his average monthly number of seizures without the benefit of his medical records, the Commissioner acknowledges that the medical record demonstrates that he suffered between two to three seizures per month on average. (*Id.*) As discussed below, the record reflects that two seizures each month precludes Plaintiff from full-time employment.

Third, the ALJ suggested that Plaintiff's seizures may be secondary to "medication noncompliance and alcohol withdrawal." (Tr. 22.) However, the ALJ based that conclusion on one emergency room visit in January 2020, when Plaintiff reported increased seizure activity and

a fall. [4] (*Id.* at 21.) Plaintiff reported medication noncompliance at that time and sought resources to help him stop drinking (*Id.* at 544, 606, 598-99), and later testified that he stopped drinking after that incident. (*Id.* at 49.) The only other example of medication noncompliance the ALJ cited was an incident in August 2022 when Plaintiff stopped taking a new medication because of its side effects. (*Id.* at 22.) Aside from these two isolated examples, there is no other evidence in the record of medication noncompliance, nor any medical opinion concluding that Plaintiff's seizures result from alcohol withdrawal. Instead, the record reflects consistent diagnoses from multiple providers of Plaintiff's seizure disorder over a span of several years. (*See, e.g.*, *id.* at 433-34, 452-67, 477, 479, 484, 526-29, 544, 581, 599, 852, 916-17, 941, 946, 1004, 1014, 1025, 1046, 1054, 1068, 1074, 1082, 1088, 1111, 1116, 1130, 1133, 1137, 1143, 1147, 1171, 1179, 1195, 1420, 1426, 1433, 1438, 1541.) In any event, even if Plaintiff's seizures are "multifactorial in etiology" (*id.* at 22), there is nothing in the record that calls into question Plaintiff's reports to his providers regarding the frequency of his seizures which are corroborated by his longitudinal medical record, objective medical evidence, and testimony.

The Court finds that the ALJ erred by relying on an isolated emergency room visit to support discounting Plaintiff's testimony without viewing that event in the context of the entire medical record. *See Robbins*, 466 F.3d at 882 (holding that a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence" (quoting *Hammock*, 879 F.2d at 501)); *see also Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ

---

[4] At that same visit, a hospital physician concluded that Plaintiff "had a high probability of imminent or life-threatening deterioration due to increased seizures and intracranial hemorrhage[.]" (Tr. 546.)

PAGE 15 – OPINION AND ORDER

cannot "cherry-pick" from the record to support findings while ignoring evidence that contradicts those findings).

In summary, the ALJ acknowledged Plaintiff's "persistent" grand mal seizures and accurately summarized the timeline of his frequent seizures beginning in October 2018, but then discounted Plaintiff's testimony about the frequency of the seizures based on a gap in treatment prior to the adjudicatory period and an isolated emergency room visit in 2020. The Court finds that the ALJ did not provide specific, clear, and convincing reasons to discount Plaintiff's testimony regarding the frequency of his seizures.[5]

### III.   REMEDY

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits. (*Id.* at 16; Pl.'s Reply Brief at 2-5, ECF No. 15.) The Commissioner responds that "Plaintiff has not met th[e] high bar" for a benefits remand, but does not point to any issues that remain unresolved. (Def.'s Br. at 21.) The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

#### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

---

[5] Plaintiff also argues that the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's fiancée, Jennie M. (Pl.'s Br. at 14-16.) In light of the Court's conclusions above and remand for benefits, the Court does not reach the ALJ's evaluation of the lay witness testimony.

PAGE 16 – OPINION AND ORDER

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

B.     Analysis

The Court has concluded that the ALJ failed to provide legally sufficient reasons for rejecting FNP Whidden's medical opinion and Plaintiff's testimony regarding his grand mal seizures. The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity and effects of his impairments, and further proceedings would serve no useful purpose. *See id.* ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.") (citations omitted).

Further, if Plaintiff's symptom testimony and FNP Whidden's medical opinion are credited as true, the record reflects that Plaintiff would miss at least four days of work per month due to his impairments.[6] (Tr. 998.) The VE testified that although there is "great variability

---

[6] FNP Whidden opined that Plaintiff would miss four workdays per month as a result of his seizures and headaches, but the record also reflects that Plaintiff would miss at least one day

PAGE 17 – OPINION AND ORDER

between employers and industries[,]" typically the customary number of absences an employer will tolerate is "six to eight days per year" which is the "equivalent of missing one day every six to eight weeks." (*Id.* at 72, "[M]ore liberal employers" might "allow up to one day per month before . . . threat of termination. But the average nationally is around six to eight days per year.") As a result of the VE's testimony, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1021 n.28 (explaining that "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true").

    Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. Plaintiff testified that he has suffered from unpredictable and debilitating grand mal seizures for several years, and the medical record and FNP Whidden's medical opinion corroborate that Plaintiff suffered an average of more than two seizures per month during the adjudicatory period despite taking various anti-seizure medications. The record further reflects that Plaintiff would miss at least one day of work with each seizure, and therefore the documented frequency of Plaintiff's seizures alone is disabling per the VE's testimony, even before factoring in Plaintiff's daily headaches and occasional migraines. For these reasons, the Court does not have serious doubt about whether Plaintiff is disabled and therefore remands this case for the calculation and payment of benefits. *See Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government

---

of work each time he suffers a seizure (or more than one day if his testimony about his recovery time is credited as true), and the Commissioner acknowledges that Plaintiff suffered, on average, more than two seizures per month. (Def.'s Br. at 6.) Thus, even considering only the impact of Plaintiff's seizures, Plaintiff would miss more days of work than employers customarily tolerate.

PAGE 18 – OPINION AND ORDER

argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 10th day of February, 2025.

                                                                          _____
                                                                          HON. STACIE F. BECKERMAN
                                                                          United States Magistrate Judge